# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01376-COA

**CHRISTOPHER JEROME BROWN A/K/A**  **APPELLANT**
**CHRISTOPHER BROWN**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2024 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: AMBER LAUREN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PARKER ALAN PROCTOR JR. |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/28/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Christopher Jerome Brown shot and killed Nicholas Pittman on Saturday, July 24, 2021.  A Jackson County grand jury indicted Brown on two counts: murdering Pittman (Count I) and being a felon in possession of a firearm (Count II) ("felon-in-possession"). Following a jury trial, Brown was convicted of both counts.  The Jackson County Circuit Court sentenced Brown to life imprisonment in the custody of the Mississippi Department of Corrections for Count I and a concurrent term of ten years for Count II.  After denial of his post-trial motion, Brown appealed.  On appeal, Brown asserts: (1) the trial court erred

when it denied his *Batson*[1] challenge; and (2) the trial court erred when it denied his pretrial motion to sever Count I and Count II.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Brown's trial took place October 14-16, 2024.  Prior to trial, Brown moved to sever the murder and felon-in-possession counts against him, which the trial court denied.  We address the details of this motion below.

¶3.     During jury selection, the State used a peremptory strike to exclude Juror 26, an African American woman.  Brown asserted a *Batson* challenge, which the trial court denied.  We address Brown's *Batson* challenge below.

¶4.     After the jury was empaneled and given preliminary instructions regarding how the trial would be conducted and their duties as jurors, both parties gave their opening statements. During their opening remarks, both parties referred to an agreed-upon stipulation that Brown had a prior felony conviction.  The trial court read the stipulation to the jurors following opening statements.

¶5.     At trial, the State presented ten witnesses,[2] including four witnesses who were present on the day of the shooting:  Pittman's son L.G., who was fifteen at the time of trial, and Pittman's sister, niece, and his niece's friend.  Brown testified in his own defense.  Three

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] Other State witnesses included law enforcement personnel who responded to the 911 call or investigated the case, the chief medical examiner from the Mississippi Department of Public Safety, and Lori Beall and Lauren Harvey who were with the Mississippi Forensics Laboratory and who specialized in firearms identification and trace evidence, respectively.

other witnesses also testified for the defense: Brown's significant other and L.G.'s mother, Evonne Gipson, and Brown's nephew, who were both present when the shooting occurred, and Jasmine Everett, a forensic interviewer from the Child Advocacy Center who interviewed L.G. four days after the shooting.

¶6. L.G. is Evonne's only child. Pittman was his father. Evonne and Pittman had dated for about a year and a half, and L.G. was conceived during that time. Evonne testified that she and Pittman had an amicable separation and continued to co-parent L.G. Typically, Evonne cared for L.G. during the week, and Pittman took care of L.G. on the weekends and holidays.

¶7. When questioned about her relationship with Brown, Evonne testified, "[he] is my significant other and he's the guy who I love." She described Brown as "a calm, cool, collected person." They had been together at least three years before the shooting and were still together at the time of trial.

¶8. L.G. was twelve when his father was shot. He testified that on Saturday, July 24, 2021, he and his cousin had gotten into an argument about some hot dogs she had knocked off his plate. Brown had walked into the room and told L.G., "quit acting like a girl." L.G. called his father and told him what Brown said to him. Pittman said he would come over and pick up L.G. L.G. also sent a text message to Pittman, asking his father to "[d]on't do none [(nothing)]" and to "just come get me because my momma mad and said I run my mouth too much."

¶9. Pittman drove his sister's car to pick up L.G. at Evonne's house. His sister, niece, and

3

his niece's friend all went with him. These witnesses testified that Pittman did not seem upset on the way to Evonne's house and that they did not see him with a weapon at any time that day. When they got to Evonne's house, Pittman parked the car, walked to the front door, and knocked. L.G. answered the door and then got his mother, telling her Pittman wanted to speak with her. Evonne went to the door and stepped out onto her front door step to talk with Pittman. Evonne testified that Pittman was upset about what Brown said to L.G. She and Pittman began arguing. According to Evonne, Pittman said, "you can't save him [(Brown)], tell that b**** a** n***** to bring his b**** a** outside." Pittman was talking loudly.

¶10.    Brown testified that he heard the arguing and "a commotion at the [front] door." Brown heard Pittman say, "Go get my gun, let me in, tell that n** to come outside." Brown's "heart was pumping out of [his] chest," and he was "shaking." He thought Pittman "would break him up" if Pittman got to him, "you know, paralyze me or whatever." Brown was five feet, ten inches tall and weighed "about 150 pounds" at the time. According to the autopsy report, Pittman was six feet, three inches tall and weighed 248 pounds.

¶11.    While the arguing between Evonne and Pittman continued, Brown went to a closet and got a loaded pistol "for his protection." Then Brown opened the front door, "mainly to check on [Evonne]." According to Brown, when he saw how angry Pittman was, he was "terrified." Brown told Pittman he "needed to leave," and "that's when [Pittman] swiped [Evonne] out the way" and took a step toward Brown. Brown testified that he had to protect himself, and he did that "by firing." The State medical examiner testified that Brown shot

4

Pittman multiple times, and Pittman died from these gunshot wounds.

¶12.    Each side rested, and a jury instruction conference was held outside the presence of the jury.  The trial judge read the instructions to the jury, and neither side made any objection that the jury instructions, as read to the jury, were incorrect. We address particular instructions and the stipulation read to the jury in more detail below.

¶13.    After deliberating, the jury found Brown guilty of both the murder and felon-in-possession charges against him.  The trial judge sentenced Brown as set forth above. Brown filed a "Motion for New Trial or, in the Alternative, for Acquittal Notwithstanding the Verdict," asserting, among other contentions, that the trial court erred when it denied his *Batson* challenge and his motion to sever Count I and Count II.  The trial court denied Brown's post-trial motion.  Brown appealed.

### DISCUSSION[3]

### I.    *Batson* Challenge

¶14.    Brown asserts that the trial court erred by accepting the State's race-neutral reason for exercising a peremptory strike on Juror 26, an African American woman, in violation of *Batson v. Kentucky*.  *Batson* prohibits racial discrimination through the use of peremptory challenges.  *Batson*, 476 U.S. at 97-98. We must "give[] great deference to a trial court's determination under *Batson* because it is based largely on credibility." *Batiste v. State*, 121 So. 3d 808, 848 (¶83) (Miss. 2013); *accord Smith v. State*, 258 So. 3d 292, 301 (¶22) (Miss. Ct. App. 2018).  "We will not overturn the trial court's ruling unless it was clearly erroneous

---

[3] The applicable standards of review are discussed under each issue.

or against the overwhelming weight of the evidence." *Batiste*, 121 So. 3d at 848 (¶83); *Manning v. State*, 765 So. 2d 516, 520 (¶11) (Miss. 2000).

¶15. The trial court must follow a three-step process in addressing a *Batson* challenge. "First, the defendant must establish a prima facie case of discrimination in the selection of jury members." *Smith*, 258 So. 3d at 301 (¶23) (quoting *Berry v. State*, 802 So. 2d 1033, 1037 (¶11) (Miss. 2001)). Second, "[t]he prosecution . . . has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation." *Id.* Third, "the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State." *Id.*

¶16. Brown asserts that the trial court erred in denying his *Batson* challenge because after the State offered its race-neutral reason for striking Juror 26, "the trial court determined that the State's reason was race neutral without offering the defense an opportunity to show how the State's strike was merely pretextual instead."

¶17. We are unpersuaded by this argument. As the trial transcript reflects, the trial court judge did, in fact, allow defense counsel to respond to the State's race-neutral reason, as follows:

> Brown's counsel: I do have something I'd like to put on the record in regard to Juror Number 26, . . . essentially offering up a *Batson* challenge. [She] is the only black person that was within at least the first 30, maybe 40 members of the jury pool. She, to my knowledge, did not speak at all. So, I'm asking that the State assert a race[-]neutral reason for why she was a peremptory strike.

6

| | |
|---|---|
| The [c]ourt: | Do y'all [(the prosecution)] have a response to that? |
| The State: | *. . . [O]ur reason for striking her is that she had her head held down the entire time. That was noted by multiple members of my office. She did not respond to any questions. I don't even think she held her card up. Overall, she just did not look like she was interested to be here.* |

(Emphasis added).[4]

¶18.    The trial judge then asked defense counsel for her rebuttal to the State's race-neutral

reason, as follows:

| | |
|---|---|
| The Court: | Do you [(defense counsel)] have anything else? |
| Brown's counsel: | Just that I don't, you know, necessarily think that there has to be a pattern when it's the only black person within, you know 40-plus people on the venire. My client is, obviously, a black male. He's entitled to a fair trial by a jury of his peers. We think that includes jurors of his race, as well. *And I – again, she didn't speak, so I don't see what the reason for striking her.* |
| The Court: | Well, I don't really see a pattern of striking; but, even if I did, I find that that's a race[-]neutral reason, and your motion is denied. |

(Emphasis added).

¶19.    As the transcript shows, Brown essentially provided no rebuttal to the race-neutral

reason presented by the State—that Juror 26 was unresponsive, "held [her head] down the

entire time," and "[o]verall she just did not look like she was interested to be here."  Instead,

Brown's counsel simply noted that the juror "didn't speak," and then informed the trial court

---

[4] "When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant's prima facie case becomes moot." *Manning v. State*, 735 So. 2d 323, 339 (¶28) (Miss. 1999).  Therefore, this issue is not before us.

7

that she did not "see . . . the reason for striking her."

¶20. In his post-trial motion, however, Brown contended that the State's reason for excluding Juror 26 was pretextual, asserting that "[t]he State's failure to *voir dire* as to the characteristic cited— disinterest—as well as the characteristic cited being unrelated to the facts of the case, demonstrate that the [State's] 'race-neutral' reason was implausible and a pretext for discrimination." Brown raises these same assertions on appeal.

¶21. The supreme court has set forth five indicia of pretext for use in determining whether the race-neutral reason was a mere pretext, as follows:

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

*Manning*, 765 So. 2d at 519 (¶9) (internal quotation marks omitted). "The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination." *Hicks v. State*, 973 So. 2d 211, 219 (¶23) (Miss. 2007). We find that Brown failed to meet his burden to do so here.

¶22. We are not convinced by Brown's first assertion that the prosecutor's failure to voir dire on Juror 26's disinterest demonstrates that this reason is pretextual. We find *Manning* and *Smith* helpful in our analysis of this issue. *Manning*, 765 So. 2d at 519-20 (¶¶10-11); *Smith*, 258 So. 3d at 305 (¶¶34-35).

¶23. In *Manning*, the State's race-neutral reason was based on a witness's hostile demeanor. *Manning*, 765 So. 2d at 520 (¶10). The supreme court observed that "[t]he

8

demeanor of a potential juror would not be reflected in the record absent comment from counsel or the trial judge, which did not occur in this case." *Id.* at (¶11). "As a result," the supreme court noted, "the prosecutor's proffered reason is neither supported nor disproved by the record." *Id.* In such a situation, "[the] trial court's determination of whether or not a reason is race-neutral largely depends on the credibility of the prosecutor." *Id.* Continuing, the supreme court held: "We have previously accepted a juror's demeanor as a valid race-neutral reason for a peremptory strike, . . . and [we] therefore give deference to the trial judge's acceptance of this race-neutral reason offered by [the State] in this case." *Id.* (internal citation omitted).

¶24. In *Smith*, the State's race-neutral reason was juror disinterest, like the situation here. *Smith*, 258 So. 3d at 304 (¶34). And like Brown, Smith contended that the judge's and prosecutor's failure to question stricken jurors on their lack of interest indicated these reasons were pretextual. *Id.* This Court rejected Smith's contention. *Id.* at 304-05 (¶¶34-35). Because the lack of any voir dire on the jurors' disinterest would not be reflected in the record, the Court based its decision on the supreme court's reasoning in *Manning*. *Id.* at 305 (¶35). That is, the Court deferred to the trial court's acceptance of the State's race-neutral reason that the stricken jurors in that case appeared disinterested. *Id.* We likewise do so here. Accordingly, we reject Brown's pretextual contention regarding the absence of a voir dire on Juror 26's disinterest in this case.

¶25. We are also not convinced by Brown's assertion that Juror 26's disinterest is pretextual because it "is unrelated to the facts of the case." In *Smith* we rejected the same

9

assertion, recognizing that the demeanor of the three jurors in that case—demonstrating their disinterest—was, indeed, related to the facts of the case. *Smith*, 258 So. 3d at 304 (¶33). In reaching this conclusion, we cited *Lockett v. State*, 517 So. 2d 1346, 1351-52 (Miss. 1987), for the proposition that a juror's "demeanor is a legitimate reason, *related to any case*, for a prosecutor to exercise a peremptory challenge." *Smith,* 258 So. 3d at 304 (¶33) (quoting *Lockett*, 517 So. 2d at 1351-52)) (emphasis added in *Smith*). We apply the same reasoning here and find that Brown's assertion on this point is without merit.

¶26. In short, Brown essentially offered no rebuttal to the State's race-neutral reason—Juror 26's disinterest—during his *Batson* challenge, and we are not persuaded by the pretextual contentions Brown asserted in his post-trial motion, as we have discussed above. As such, we find no error in the trial court's ruling that even if Brown established a prima facie case of discrimination so as to allow him to proceed with his *Batson* challenge, Juror 26 was struck for race-neutral reasons—avoiding eye contact, inattention, and disinterest. Indeed, both the supreme court and this Court have held that these behaviors are race-neutral reasons for a peremptory challenge. *See, e.g.*, *Horne v. State*, 825 So. 2d 627, 636 (¶24) (Miss. 2002) ("Inattentiveness alone has been accepted as a race-neutral explanation for the exercise of a peremptory strike." (citing *Puckett v. State*, 788 So. 2d 752, 760 (¶18) (Miss. 2001)); *Berry*, 802 So. 2d at 1043 (¶36) (recognizing that "inattentiveness, boredom, dress, demeanor, unemployment, and sleeping during voir dire have all been determined by this Court to be racially neutral reasons"); *Marshall v. State*, 393 So. 3d 1113, 1118 (¶11) (Miss. Ct. App. 2024) (citing cases and finding juror distraction was a race-

neutral reason for striking juror), *cert. denied*, 392 So. 3d 990 (Miss. 2024); *Garlington v. State*, 349 So. 3d 782, 803-04 (¶¶68, 71) (Miss. Ct. App. 2022) (citing cases and determining that juror unresponsiveness, inattention, and failure to make eye contact, among other reasons, were race-neutral reasons for exercising peremptory strikes); *Smith*, 258 So. 3d at 304 (¶31) (recognizing that "[p]recedent supports that juror disinterest and inattention are race-neutral reasons for a peremptory challenge").

¶27.   On appeal, Brown asserts for the first time that "[t]he record reflects that, along with potential Juror No. 26, selected Jurors Nos. 1, 7, 14, 21, and 25 also did not speak individually during *voir dire*." Brown did not raise this point before the trial court. He has therefore waived this assertion on appeal. *See Corrothers v. State*, 148 So. 3d 278, 306 (¶66) (Miss. 2014).

¶28.   For the reasons stated, we find no error in the way in which the trial court conducted Brown's *Batson* challenge or in the trial court's ruling accepting the State's articulated race-neutral reason for striking Juror 26. The trial court's *Batson* ruling was neither clearly erroneous nor against the overwhelming weight of the evidence. Finding no error, we affirm.

### II.   Motion to Sever

¶29.   Brown asserts that the trial court erred when it denied his motion to sever Count I (murder) from Count II (felon-in-possession) in the indictment. "[We] review a trial court's denial of a motion to sever multiple counts of an indictment for abuse of discretion." *Kirkland v. State*, 373 So. 3d 149, 158 (¶53) (Miss. Ct. App. 2023) (quoting *Graves v. State*, 216 So. 3d 1152, 1163 (¶32) (Miss. 2016)). For the reasons addressed below, we find no

abuse of discretion on the part of the trial court in denying Brown's motion to sever.

¶30. Regarding "trials concerning multi-count indictments, severance is unnecessary in Mississippi if the acts or transactions are connected together as part of a common scheme or plan and if the indictment was otherwise proper." *Rushing v. State*, 911 So. 2d 526, 532 (¶13) (Miss. 2005) (citing Miss. Code Ann. § 99-7-2 (Rev. 2000)). Section 99-7-2 provides, as follows:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

Miss. Code Ann. § 99-7-2(1)-(2) (Rev. 2020); *see also* MRCrP 14.2(a)(1)-(2), (c)(1).

¶31. Pursuant to Mississippi Rule of Criminal Procedure 14.3(a)(2), "[t]he court *may*, on motion of the state or a defendant, grant a severance of defendants or offenses if it is deemed appropriate to promote the fair determination of a defendant's guilt or innocence of each offense." MRCrP 14.3(a)(2) (emphasis added). Thus, severance is not a matter of right. Rather, severance "may" be granted in the court's discretion. *Id.*

¶32. "When deciding whether a multi[-]count indictment [is] proper, the trial court should consider the following factors: (1) the time period between the offenses, (2) whether the evidence proving each count would be admissible to prove each of the other counts, and (3) whether the crimes are interwoven." *Richardson v. State*, 74 So. 3d 317, 324 (¶22) (Miss. 2011) (citing *Corley v. State*, 584 So. 2d 769, 772 (Miss.1991)); *accord*, *Kirkland*, 373 So.

3d at 159 (¶57). For ease of reference, we refer to these factors as the "*Corley* factors."

¶33.    In this case, the trial court considered Brown's motion to sever in a pretrial hearing.[5] Applying each *Corley* factor, the trial court denied Brown's motion, finding that

> (1) the offenses were committed in the same time period, (2) the evidence proving Possession of a Weapon by a Convicted Felon in Count II is necessary and admissible to prove Murder in Count I and to disprove self-defense pursuant to the Castle Doctrine, and (3) the crimes are indisputably interwoven.

¶34.    Brown moved for reconsideration concerning the trial court's determination with respect to the second *Corley* factor, asserting that "[m]urder is a separate crime with separate elements [from Count II] and may be proven without evidence that Christopher Brown was a convicted felon in possession of a firearm." Brown therefore contended that evidence that Brown was a convicted felon was not "necessary" to prove murder. Brown also asserted, among other contentions, that the trial court's reasoning that evidence of Brown's felony conviction was "necessary to disprove self-defense pursuant to the Castle Doctrine" was

---

[5] At the pretrial hearing, defense counsel first presented her argument that the two counts should be severed, followed by the State presenting its argument. Defense counsel was then given an opportunity for rebuttal. In *Richardson*, the supreme court recognized that "*Corley* directs that the State must first present a prima facie case showing that the offenses may be tried together and that the defendant may rebut the State's case." *Richardson*, 74 So. 3d at 325 n.3 (citing *Corley*, 584 So. 2d at 772). Nevertheless, the supreme court found no error even though the trial court in that case "did not follow the exact procedure outlined in *Corley*." *Id.* The supreme court noted that "the State and Richardson were still able to present both sides of their arguments to the trial court. [Defense] counsel also initiated the discussion of the motion at the hearing and did not object to presenting the defense's argument before the State presented its argument." *Id.* Further, "[the defendant] also [did] not argue on appeal that the exact *Corley* procedure was not followed at the trial court." *Id.* These identical circumstances are present here. Accordingly, we find no error, despite the fact that the trial court did not follow the precise procedure recommended in *Corley*.

13

"premature" because "[d]efendant's defenses have yet to be presented."

¶35. The trial court granted Brown's motion to reconsider. On reconsideration, the trial court did not reverse its prior order, but did rescind and clarify it with respect to its finding on the second *Corley* factor. Specifically, the trial court replaced its original finding on that factor with the following "clarif[ication] and modif[ication]," as follows:

> "Multiple counts [do] not need to be severed simply on the basis that evidence in one count would not be admissible as to the other count if the two were tried separately." [(Quoting *Richardson*, 74 So. 3d at 326 (¶29))]. As in *Richardson*, the Court recognizes that there may be different witnesses and different evidence for the two crimes, but there will likely be instances where one or more witness can prove both counts. The Court will provide a limiting instruction to the jury that the two counts are separate offenses and should be considered separately.

(Footnotes omitted).

### A.      The *Corley* Factors

¶36. We find that the trial court did not abuse its discretion when it found that none of the *Corley* factors weigh in favor of severance and, accordingly, denied Brown's motion to sever. As our own review of the record shows, the first *Corley* factor, timing, is plainly met—the two crimes occurred at the same time. Brown illegally possessed the weapon as a convicted felon, and he shot and killed Pittman with that weapon. That Brown committed both crimes simultaneously also shows that the third *Corley* factor, whether the crimes are "interwoven," weighs against severance. Indeed, Brown does not challenge the trial court's findings with respect to the first and third *Corley* factors.

¶37. In addressing the second *Corley* factor—whether the evidence proving one count would be admissible to prove the other count—we begin with a review of the elements of the

castle doctrine, which is a defense to murder (Count I); the elements of the felon-in-possession charge (Count II); and the elements of necessity, "a valid defense to possession of a firearm by a convicted felon." *Williams v. State*, 953 So. 2d 260, 263 (¶9) (Miss. Ct. App. 2006).

¶38. Mississippi Code Annotated section 97-3-15(3) (Rev. 2020) codifies the castle doctrine. "[T]o allege a factual basis under the [c]astle [d]octrine, proof of two prongs must be presented." *Nichols v. State*, 376 So. 3d 394, 401 (¶22) (Miss. Ct. App. 2023). "First, if the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force." *Id.* "Second, if the jury finds that any of the circumstances in section 97-3-15(3) are satisfied, the defendant who uses such defensive force is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him." *Id.*; *see* Miss. Code Ann. § 97-3-15(3)*. See generally* 3A Jeffrey Jackson et al., *Encyclopedia of Mississippi Law* § 23:43 (3d ed. updated Apr. 2026).

¶39. "For a person to be convicted of unlawful possession of a firearm by a convicted felon, the State must prove: (1) the defendant was in possession of a firearm; and (2) the defendant had previously been convicted of a felony crime." *Billups v. State*, 270 So. 3d 917, 920 (¶8) (Miss. Ct. App. 2018). "[I]n order to be entitled to a defense of necessity, the defendant must prove the following: (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided." *Anderson v. State*, 185 So. 3d 1015, 1024 (¶34) (Miss. Ct. App. 2014),

15

*aff'd*, 185 So. 3d 966 (Miss. 2015) (quoting *Williams*, 953 So. 2d at 263-64 (¶9)).

¶40.   With these principles in mind, we find no abuse of discretion in the trial court's finding that the second *Corley* factor likewise weighed against severance.   The same evidence the State must present to prove Brown was a convicted felon in possession of a firearm (Count II) is also admissible and must be presented by the State to *disprove* a justifiable homicide defense to Brown's murder charge (Count I), including the castle doctrine.  *See Woods v. State*, 242 So. 3d 47, 60 (¶56) (Miss. 2018).  As the *Woods* court explained,

> In a criminal case, the burden of proof remains always with the prosecution on each element of the offense.  The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted.  *Thus, the State had the burden of disproving justifiable homicide, i.e., self defense and the elements of the* [c]astle [d]octrine.

*Id.* (emphasis added) (citations and quotation marks omitted).

### B.   Alleged Prejudice

¶41.   Brown, however, asserts that he was prejudiced by the two counts being tried together because this required the jury to be instructed on the castle doctrine, which pertains to the murder charge, and necessity, which relates to the felon-in-possession charge.  According to Brown, "this resulted in conflicting and confusing instructions to the jury" because self-defense, including the castle doctrine, "is not a viable defense to possession of a firearm by a convicted felon."

¶42.   We are not convinced by this argument.  Reviewing the jury instructions as a whole,

16

as we must,[6] we find nothing "conflicting" or "confusing" about the jury being instructed on both defenses in this case. The castle doctrine jury instruction expressly provides that the castle doctrine applies "[a]s to Count I: Murder." (emphasis added).[7] The jury was also instructed that it was "not incumbent upon [Brown] . . . to prove that he acted in necessary self-defense." Rather, "the burden is upon the State to prove beyond a reasonable doubt that at the time of the slaying [Brown] did not act in necessary self-defense." Regarding the necessity defense, the jury was specifically instructed that this defense applies to "*Count II . . . the crime of possession of a weapon by a convicted felon.*"[8] (Emphasis added).

---

[6] "The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context." *Gardner v. State*, 430 So. 3d 818, 832 (¶52) (Miss. 2026). Further, "[i]f the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.*

[7] The jury was instructed on the castle doctrine, as follows:

*As to Count I: Murder*, the Court instructs you that if you, the jury, find the defendant has shown that Christopher Jerome Brown had a right to be where he was; that he was not the immediate provoker or aggressor; that he was not engaged in unlawful activity; and that Nicholas Pittman was in the process of unlawfully and forcibly entering the dwelling or immediate premises, or attempting to remove Christopher Jerome Brown or another person, another lawful occupant of the dwelling or immediate premises; Christopher Jerome Brown knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred, the defendant is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him; then you, the jury, are instructed that the defendant, Christopher Jerome Brown, is presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him.

[8] After being instructed on the elements of felon-in-possession, the jury was then instructed on the defense of necessity, as follows:

If you find from the evidence that Christopher Jerome Brown

17

¶43. We also point out that although, as Brown asserts, Mississippi law does provide that "self-defense is not a viable defense to possession of a firearm by a convicted felon," *Roberson v. State*, 19 So. 3d 95, 101 (¶9) (Miss. Ct. App. 2009), we find nothing confusing about that concept in the context of the jury instructions here. The necessity jury instruction plainly sets forth the three elements required to prove necessity, as follows:

> In order to find the defendant, Christopher Jerome Brown, acted out of necessity, you must find, one, the act charged, possession of a weapon by a convicted felon, was done to prevent a significant evil; two, there was no adequate alternative to possessing the weapon; and, three, the harm caused was not disproportionate to the harm avoided.

The elements delineated in the necessity instruction do not include self-defense or refer to it in any way.

¶44. The Mississippi appellate courts "presume[] that jurors follow the instructions of the court. To presume otherwise would be to render the jury system inoperable." *Gardner*, 430 So. 3d at 832 (¶52). For the reasons discussed, we find that the jury instructions read to the jury, without objection, were neither confusing nor conflicting. Accordingly, we find that Brown suffered no prejudice based upon the jury instructions in this case.

---

> possessed a weapon, even though he was a convicted felon, but that he possessed the weapon out of necessity, then you must find the defendant, Christopher Jerome Brown, not guilty of *Count II, possession of a weapon by a convicted felon*.
>
> In order to find the defendant, Christopher Jerome Brown, acted out of necessity, you must find, one, the act charged, possession of a weapon by a convicted felon, was done to prevent a significant evil; two, there was no adequate alternative to possessing the weapon; and, three, the harm caused was not disproportionate to the harm avoided.

¶45. Citing Rule 14.3,[9] Brown also asserts that "[w]ithout a severance, a fair determination was nearly impossible, [because] Brown was automatically prejudiced by the jury being presented evidence that he was a convicted felon." Brown argues that because the stipulation concerning his felony conviction was read at the beginning of trial, this knowledge "tainted" the jury "from the outset of the case, such that its judgment of each count and application of the law during the deliberation was also likely tainted." We are unconvinced by these assertions.

¶46. As the supreme court has explained, "multiple counts [do] not need to be severed simply on the basis that evidence in one count would not be admissible as to the other count if the two were tried separately." *Richardson*, 74 So. 3d at 326 (¶29) (finding no abuse of discretion in the trial court's denial of defendant's motion to sever the capital murder and felon-in-possession counts against him); *accord Kirkland*, 373 So. 3d at 159-60 (¶¶59-60).

¶47. This is particularly true where, as here, the trial court gave a limiting instruction specifically informing the jurors that "[Brown's] prior conviction may not be considered as evidence that Christopher Jerome Brown committed the crime to which he is charged in Count I, which is murder." *See Richardson*, 74 So. 3d at 327 (¶33); *Kirkland*, 373 So. 3d at 160 (¶60).

¶48. Additionally, the stipulation read to the jury regarding Brown's prior felony conviction further ensured that there was no intertwining of Brown's past felony conviction

---

[9] As noted, Rule 14.3 allows a court, in its discretion, to "grant a severance of defendants or offenses if it is deemed appropriate to promote the fair determination of a defendant's guilt or innocence of each offense." MRCrP 14.3(a)(2).

with the murder charge against him. The agreed-upon stipulation contained no reference to the details of the past conviction, other than to specify that it was a "*nonviolent* felony offense" that occurred *eleven years prior to trial*, and expressly provided that this conviction applied *only* to the felon-in-possession count against him, as follows: "[A]s to the element of a prior conviction in support of Count II, possession of a firearm by a convicted felon, . . . the said Christopher Jerome Brown was previously convicted of a *nonviolent* felony offense on *January 8, 2013*." (Emphasis added). *See Richardson*, 74 So. 3d at 326-27 (¶¶28, 31-32) (recognizing the value in parties stipulating to a prior conviction, "without any reference to the nature of the [prior] offense . . . or any other details of the prior conviction," and noting that defense counsel had missed a "golden opportunity" to do so in that case where defendant faced capital-murder and felon-in-possession charges against him).

¶49.    We also find no purported prejudice in the trial court's reading the stipulation at the beginning of trial, as Brown contends. On the contrary, both the State and defense counsel agreed that the stipulation should be read before the presentation of evidence at trial, and there was good reason to do so because both parties had already referred to the stipulation in their opening remarks. Indeed, Brown's counsel emphasized the distant and nonviolent nature of Brown's prior felony in her opening statement, telling the jury that "[w]e're also not denying that Chris [Brown] is a convicted felon of *one nonviolent* crime that occurred *11 years ago*."

¶50.    For all these reasons, we find no abuse of discretion in the trial court's denying Brown's motion to sever Count I and Count II in this case.

20

**CONCLUSION**

¶51. Because we find no error in the trial court's *Batson* ruling regarding Juror 26, and we find that the trial court did not abuse its discretion in denying Brown's motion to sever Count I and Count II in this case, we affirm Brown's convictions and sentences.

¶52. **AFFIRMED**.

**BARNES, C.J., WILSON, P.J., WESTBROOKS, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**